[Civ. No. 16993. Second Dist., Div. Three. Feb. 6, 1950.]

FLETCHER AVIATION CORPORATION (a Corporation), Respondent, v. LANDIS MANUFACTURING COMPANY, INC. (a Corporation) et al., Appellants.

Samuel J. Crawford and Joseph T. Enright for Appellants.

Cosgrove, Clayton, Cramer & Diether, Leonard A. Diether and Frank D. MacDowell for Respondent.

WOOD, J.—Action for damages for conversion of certain patterns and dies, and for the value of a leasehold estate of which plaintiff was dispossessed. Judgment was for plaintiff, and defendants appeal.

In 1941, the plaintiff was in the business of designing and manufacturing airplanes. In that year the plaintiff entered into a contract with the United States to manufacture air-

planes, and proceeded with the performance of that contract until it was terminated by the United States in 1942. On November 1, 1943, the plaintiff, whose place of business was in Pasadena, subleased a room in a factory building from the Douglas Aircraft Company, in Santa Monica, for three years ending October 31, 1946. The room, which was known as the "drop-hammer room," was about 25 feet wide and 44 feet long. In this room plaintiff stored plaster patterns and metal dies which were used by it in manufacturing airplanes. Some time in 1946, prior to June 15th, defendant Ben Landis (who was president of the defendant corporation) purchased said building and the land upon which it was situated, subject to the above mentioned lease and sublease. Then he conveyed said premises to the defendant corporation which was engaged in the business of manufacturing popcorn vending machines and automobile accessories. The defendant corporation (hereinafter referred to as the defendant) then asked Douglas Aircraft Company for permission to occupy a part of the premises. Defendant Landis testified that a warehouseman of the Douglas Aircraft Company told him that the defendant could use the drop-hammer room if the defendant would clean it out. Thereafter, about June 15, 1946, the defendant, without the knowledge or consent of the plaintiff, entered the subleased room, removed the patterns and dies here involved, changed the lock on the door, and thereafter occupied the room until the termination of plaintiff's sublease. The defendants sold the metal dies to a junk dealer for $487, and hauled the plaster patterns to a "dump."

Appellants contend that plaintiff was not the owner and was not in lawful possession of the patterns and dies; and that the damages are excessive. There is no question on this appeal regarding the part of the judgment which provides that plaintiff recover $500, the value of the leasehold.

The amended complaint alleged that on June 15, 1946, "plaintiff was lawfully possessed of plaster patterns and drop-hammer dies for the fabrication and manufacture of a certain airplane designed and owned by plaintiff," all of which property was located on the premises (above referred to) and the area immediately adjacent thereto; that on or about said date defendants unlawfully took and carried away said personal property and "converted and disposed of the same to their own use, to the damage of plaintiff in the sum of $57,592.44." It was further alleged, as a second cause of action, that on

June 15, 1946, plaintiff was the owner and in possession of the leasehold estate (therein described), which was of the value of $500; and that on said date defendants forcibly and against the will of plaintiff entered upon said premises and took possession thereof and converted the same to their own use, and dispossessed the plaintiff to its damage in the sum of $500.

The court found that on June 15, 1946, the plaintiff was "the owner of and in possession and entitled to possession of" certain patterns and dies which were of the value of $7,587; and that on said date plaintiff was the owner of, and in possession of, "a certain leasehold estate" upon an area known as the "drop-hammer room." Judgment was for $7,587, the value of the patterns and dies, and for $500, the value of the leasehold, making a total of $8,087; and for interest thereon from June 15, 1946.

Appellants (defendants) argue, in support of their contention that plaintiff was not the owner and was not in lawful possession of the patterns and dies, that said patterns and dies were acquired by plaintiff after it entered into a contract with the United States to manufacture airplanes; and that under the provisions of the agreement terminating that contract the United States became the owner of all property acquired or produced by plaintiff in the performance of the contract. Plaintiff asserts that it is the owner of the patterns and dies, and that the contract specifically reserved in plaintiff the exclusive right to reproduce the airplanes, and the parts therefor, described in said contract. It also asserts that in any event it had sufficient interest in the patterns and dies to entitle it to maintain the action for conversion. In an action for conversion it is not necessary that plaintiff be the owner of the property involved, if the plaintiff had actual possession of the property at the time of the alleged conversion. (*Scutt* v. *Bassett*, 86 Cal.App.2d 373, 375 [194 P.2d 781]; *General Motors A. Corp.* v. *Dallas*, 198 Cal. 365, 370 [245 P. 184].) It is not disputed that plaintiff had possession of the property at the time of the conversion, but appellants argue that it was not a lawful possession. Plaintiff acquired possession of the patterns and dies in a lawful manner. Defendants admittedly were wrongdoers. It is not necessary to determine herein, as between the plaintiff and the United States, whether the United States had a superior interest in said property. One "having the possession merely is the owner as against a wrong-doer." (*Rosenthal* v. *McMann,* 93 Cal.

505, 508 [29 P. 121].) In the case of *Greenebaum* v. *Taylor*, 102 Cal. 624 [36 P. 957], there was a question similar to the one here. In that action for conversion, the plaintiff had installed certain alleged "fixtures" in a building, which building was owned by a person who was not a party to the action. The defendant therein removed some of the "fixtures" and refused to return them to plaintiff. In that action the judgment in favor of the plaintiff was affirmed, and the court stated that the question whether (as between the owner of the building and the plaintiff) the plaintiff could have removed the fixtures was not before the court.

■ Appellants' further contention that the damages are excessive is not sustainable. Appellants state in their opening brief that the patterns and dies "had a market value and that this value is the proper measure of the damages"; and they argue, in effect, that the patterns and dies had become useless and therefore the market value was the value as junk. In their closing brief appellants state that they do not contend that the measure of damages is the market value, but they contend "that the measure of damages is the value of the property plus interest to the 'owner,' or an amount to indemnify the owner specifically the United States Government." In any event, it appears that appellants' argument regarding the measure of damages is based upon the theory that the designs of the airplanes produced by plaintiff for the United States had become obsolete. Under the evidence herein it does not appear that the designs had become obsolete. During 1941 and 1942, plaintiff manufactured two kinds of military airplanes for the United States. Those were of the same basic design as a trainer airplane previously designed and made by plaintiff and known as FBT-2. Airplane parts which were made from the patterns and dies here involved were used in the manufacture of the three kinds of airplanes. In 1944, plaintiff designed a cargo airplane in the manufacture of which it used parts made from certain dies here involved. Although the records show that plaintiff manufactured office furniture and scooters for a period of time, it does not appear that plaintiff had abandoned the business of manufacturing airplanes. The court found that the FBT-2 airplane was a basic trainer airplane which continued to be suitable and usable as such. The evidence shows that plaintiff's name was on the "United States Air Force approved list" to submit bids for manufacturing airplanes; that in the fall of 1947 plaintiff received a request from the Army Air Force to submit a bid on trainer planes

in the manufacture of which plaintiff could have used parts made from said patterns and dies; that plaintiff would have been able to submit a bid in compliance with that request if plaintiff had been in possession of said patterns and dies; that plaintiff kept informed as to the needs of the "Training Command" for airplanes, and that after manufacturing the above-mentioned airplanes for the government plaintiff's engineering department continued studies of its basic FBT-2 design with a view to making airplanes for the "G.I." training program; and that at the time of the trial plaintiff was in receipt of a contract from the Army Air Corps.

Section 3336 of the Civil Code provides: "The detriment caused by the wrongful conversion of personal property is presumed to be: First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted. . . ." The court found that the patterns and dies "were on or about June 15, 1946, 10% depreciated, and on said date as so depreciated were of the value of" $7,587; and it concluded that plaintiff was entitled to interest thereon at the rate of 7 per cent per annum from June 15, 1946. It appears therefore that the trial court awarded damages upon the basis of the first alternative of said code section above quoted, namely, "The value of the property at the time of the conversion, with the interest from that time." That was the proper measure of damages in this case. In the case of *Lonergan* v. *Monroe*, 77 Cal.App.2d 223 [175 P.2d 42], it was said at page 225: "The rule is that the value at the time and place of conversion is the measure of damages." It was also said therein at page 225: "The applicability of this rule is patent where, as here, the property was fabricated for a particular purpose."

Appellants contend further that the court erred in certain rulings regarding the admissibility of evidence. They assert that the court should not have received evidence as to reproduction cost of the patterns and dies. That evidence was admissible. It was stated in *Lonergan* v. *Monroe, supra*, page 225: "[T]he cost of merchandise does not determine the amount of damages to be awarded in an action for its conversion. Such evidence is admissible, not as showing the value conclusively but only as a circumstance to aid in arriving at the value at the time in question." They also assert that

the court should not have sustained an objection to a hypothetical question, pertaining to the value of dies, which they asked their witness Nesbit. The trial judge was of the opinion that the question did not include all the factors involved. Appellants state that a hypothetical question may be based upon any theory which can be deduced from the evidence, but they do not point out in their briefs the evidence which they contend is a sufficient basis for the question. It appears, however, that the witness was permitted to testify that the patterns and dies had a scrap value only, and that the value was 6 or 7 cents a pound. ■ They also assert that the court should have permitted their witness Bacon to give his opinion as to the value of the patterns and dies. The witness had been a "supervisor of salvage" at the Douglas Aircraft Company about five years, but it does not appear that the witness was qualified to give an opinion as to the value of the property other than its value as salvage. The court stated that the witness would be permitted to testify as to the salvage value. The contention regarding the admissibility of evidence is not sustainable.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.