[Civ. No. 4326.   Fourth Dist.   July 17, 1951.]

WILLIAM WEBSTER, Respondent, v. CONRAD SCHEIDT, Defendant; M. FRIIS-HANSEN AND COMPANY (a Copartnership) et al., Appellants.

Irvine P. Aten and Aynesworth & Hayhurst for Appellants.

Frank C. Lerrigo for Respondent.

BARNARD, P. J.—This is an action to recover the value of certain personal property, either as the purchase price or on the theory of a conversion.

M. Friis-Hansen and Company, which will be referred to as Hansen, was the lessee of certain lots upon which it had erected a service station building with the normal equipment of storage tanks, pumps, etc. The terms of the lease required that these improvements remain as security until its expiration, and by implication gave Hansen the right to then remove them. Hansen later subleased the station to Eagle Oil and Refining Company, Inc., and still later Eagle subleased to the plaintiff Webster. In addition to selling gasoline Webster had installed in the building a stock of tires and accessories, which will be referred to as the "stock."

Hansen's lease expired on May 31, 1947. Prior to that date the owners of the lots leased the land to the defendant Scheidt for a term beginning June 1, 1947. This lease required Scheidt to assume the entire responsibility for any negotiations with Hansen "for the acquisition of any property owned by him." While notices of termination had been duly served by Hansen and by Eagle, Webster was allowed to continue to operate the service station after May 31, 1947, and until September 6, 1947. In the meantime, Scheidt was negotiating with Hansen for the purchase of the building and equipment owned by it. On August 1, 1947, Scheidt purported to take theoretical possession of the station and made a temporary arrangement with Webster by which Webster was to continue to operate the station, pending Scheidt's negotiations with Hansen, and was to pay Scheidt two cents per gallon on all gasoline sold. About the same time, Scheidt entered into negotiations with Webster for the purchase of the stock, which the court found were never completed.

Scheidt and Hansen were unable to agree on a price for the property owned by Hansen and on the afternoon of September 6, 1947, Scheidt notified Hansen that he would not permit the removal of the building and equipment from the premises. At 5 o'clock on Sunday morning September 7, Hansen's crew of 12 men entered the premises and removed the building and equipment. They first removed the stock from the building and by 6 a. m. had it loaded in a van. The stock was then taken to Hansen's premises, where it still remains. Scheidt and Webster appeared about 7 a. m., while the equipment was being removed. Being unsuccessful in their efforts to prevent its removal, they went to Hansen's premises and were told by

Mr. Hansen that he would not deliver the stock to them until after he had talked to his attorney. At a later date Hansen offered to deliver the stock to Webster if he would secure Scheidt's signature on a written consent which was prepared by Hansen's attorney. Scheidt refused to sign such a consent.

Webster brought this action against Scheidt and Hansen. In the first cause of action he alleged that Scheidt had orally agreed to purchase the stock at an agreed price, and had later refused to pay the sum agreed upon. In a second cause of action it was alleged that Hansen had unlawfully seized and converted this stock of goods to his own use. Judgment was prayed for as against Scheidt for the purchase price with damages, and as against Hansen in the sum of $3,032.28 for the conversion of plaintiff's property, together with certain costs of pursuit, and for damages. Among other things, the court found that Scheidt had not agreed to purchase the stock from Webster; that Webster was in possession thereof as the owner at the time the property was seized and converted by Hansen; that on September 7, 1947, Hansen unlawfully seized and converted the stock to its own use; that the fair market value of the property thus seized and converted was $2,616; and that the plaintiff had further suffered damages in connection with the pursuit of the property in the sum of $150. Judgment was entered in favor of the plaintiff as against Hansen for $2,766, with interest and costs. From this judgment Hansen has appealed.

It is first contended that the plaintiff is estopped by his pleadings, his conduct and his testimony from recovering on the ground of conversion. It is argued that he pleaded and testified that he had sold the property to Scheidt; that he allowed Hansen to believe that Scheidt was the owner of the property; and that he at no time claimed to be the owner. On the first cause of action the court found, on conflicting evidence, that Scheidt had not agreed to purchase the property in question and that Webster remained the owner thereof. The second cause of action alleged that at the time the property was taken by Hansen it was "owned by and in the possession of the plaintiff." Until it was taken by Hansen the property was in the exclusive possession of Webster, and such possession is sufficient to maintain an action for conversion. (*Fletcher Aviation Corp.* v. *Landis Mfg. Co.,* 95 Cal. App.2d 905 [214 P.2d 400].) As the court found, Webster was also the owner, and we find no conduct on his part which was sufficient to constitute an estoppel in this

action. While he thought he had sold the stock to Scheidt, he did nothing to cause Hansen to take or hold the property. He was not present when the property was originally taken. Later that morning, when he and Scheidt were together, Hansen refused to release the property until he had consulted his attorney. Hansen could have returned the stock to the one from whom it was taken, and it was not until much later that Hansen claimed to have any doubt about the matter.

It is next contended that Hansen never asserted any interest in the stock, and that his conduct with reference thereto was not sufficient to constitute a conversion. It is argued that this property was in a building which Hansen had a right to remove; that Hansen merely stored it in order to protect it from the elements and from third parties; and that he was willing at all times to deliver it to the rightful owner when he had satisfied himself in that regard. Assuming that Hansen had a right to remove the building within a reasonable time after the expiration of his lease, he had no right to take possession of Webster's property under the circumstances which here appear. Knowing that Webster had rightfully been in possession under a sublease from Eagle, Hansen permitted him to remain in possession and operation of the station for some three months, while Hansen was trying to sell the building to Scheidt. Without notice to Webster, who was in peaceful possession with the acquiescence of all parties, Hansen wrongfully and illegally entered the building early on a Sunday morning and forcibly removed and took possession of Webster's property. Apparently, it was necessary to break into the building in order to do this. There is no direct testimony on this point but Webster testified that he had the only keys to the building. It is incredible that such a building, with this stock in it, would have been left open and unattended at night. The only inference reasonably to be drawn from the evidence as a whole is that the removal of the stock was accomplished by breaking into the building. Beyond question, this was a conversion of the property. (*California Products, Inc.* v. *Mitchell*, 52 Cal.App. 312 [198 P. 646] ; *Hull* v. *Laugharn*, 3 Cal.App.2d 310 [39 P.2d 478].)

Any subsequent offer to return the property would be ineffectual as a defense. (*Hull* v. *Laugharn*, 3 Cal.App.2d 310 [39 P.2d 478].) Moreover, any subsequent offers to return the property were qualified. Hansen's later expressed desire to be sure of the rightful owner before releasing the property might have been an important element if it had come into

possession of the property rightfully, but it is not a conclusive defense under the facts and findings which here appear.

Appellants finally contend that if it be assumed that Webster was the owner of the stock of goods, and in possession of the premises, "his status was illegal and precluded recovery." It is argued that Webster knew that Hansen owned the building; that Scheidt's new lease from the owners of the land contained a provision against subleasing without the consent of the lessors; that the owners of the land had not given their written consent to a sublease from Scheidt to Webster; that Webster knew this; that Scheidt's possession of the premises was taken without purchasing Hansen's building and equipment; and that Webster is not entitled to recover because he thus participated "in an illegal act to deprive Hansen of their property and their possessory right under the contract." This contention is without merit. The owners of the land were accepting the rent from Scheidt and had not complained; Webster was in possession of the premises with the implied, if not the actual, consent of Hansen; and there is no evidence of any illegal act on the part of Webster for the purpose of depriving Hansen of its property, or which in any way tended to contribute to that end.

Without taking the legal steps which were available, Hansen took the law into its own hand and unlawfully took possession of and retained the goods in question. The evidence amply supports the court's finding of a conversion. Judgment affirmed.

Mussell, J., concurred.