[Civ. No. 21577. Second Dist., Div. One. Apr. 30, 1957.]

H. R. BUCY, Respondent, v. NEW AMSTERDAM CASUALTY COMPANY (a Corporation), Appellant.

Eugene S. Ives for Appellant.

Stanley G. Pearson for Respondent.

DORAN, J.—The controversy herein arises out of a claim and delivery action instituted by Schimel Arms Corporation against respondent Bucy to recover four dies used by Schimel in the manufacture of a carbon dioxide gun. The dies were made by Bucy, a die casting foundry operator, in 1949 or 1950; three of the dies were paid for while the fourth, known as the Gas Chamber Die, was made later and had not been paid for. Bucy claimed a lien on the dies and die molds for the unpaid price and the trial court found that such lien had not been waived.

In connection with its claim and delivery action against Bucy, the Schimel Arms Corporation provided a claim and delivery bond executed by appellant New Amsterdam Casualty Company, in accordance with section 512 of the Code of Civil Procedure, whereupon the dies were taken from Bucy by the Marshal and delivered to Schimel Arms. The undertaking provides that the New Amsterdam Casualty Company "does hereby obligate itself to defendant under said statutory obligations (C.C.P. Sections 512 and 1041) in the sum of . . . $15,000.00."

Section 512 provides that the obligors in such a bond "are bound to the defendant in double the value of the property as stated in the affidavit *for the prosecution of the action,* for the return of the property to the defendant, if return thereof be adjudged, and for the payment to him of such sum as may from any cause be recovered against the plaintiff." (Italics added.)

In the claim and delivery action Bucy filed an answer alleging right of possession by virtue of an unpaid seller's lien, but did not seek judgment for a return of the dies taken by the Marshal, or a money judgment in lieu thereof. Later, a motion was made by Bucy for permission to file an amended

and supplemental answer asking a return of the dies or the value thereof. The claim and delivery action was never tried because two days after the filing of this motion, such action was dismissed by Schimel Arms. Thereafter, Bucy filed the present action on the bond executed by New Amsterdam Casualty Company, and recovered judgment in the sum of $3,871.08, interest and costs, from which judgment New Amsterdam now appeals.

It is appellants' contention that the complaint herein fails to state a cause of action on the bond for the reason that the answer in the claim and delivery suit did not ask for a return of the property or the value thereof, or damages for detention. It is also contended that since the complaint on the claim and delivery bond "does not contain allegations that a judgment was or could have been obtained for the return of the property seized, or its value, or damages for the detention thereof," it does not state a cause of action against the surety. And finally, appellants aver that "Even if the Court had the power to find for Bucy in this action it erred in awarding Bucy a judgment in the full amount of his lien instead of awarding the damages Bucy actually suffered by reason of the taking and detention of the dies."

There is merit in none of these contentions. ▉ So far as liability on the bond is concerned, section 512 of the Code of Civil Procedure, hereinbefore quoted, specifically provides that the obligor is bound, among other conditions, "for the prosecution" of the claim and delivery action. Were this not so, a plaintiff, after having secured possession by claim and delivery, might merely dismiss the action and the defendant, although possessing a worthy right to the property seized, would have no recourse on the bond although great injury had resulted from the unjustified action. This is exactly what has happened here. In place of proceeding with a trial which would have determined whether Bucy was entitled, by reason of a lien or otherwise, to possession of the dies, the Schimel Arms Corporation dismissed its claim and delivery action against Bucy. There can, under the applicable statute, be no question as to liability on the bond.

The question of Bucy's lien on the dies appears to have been in the case from beginning to end, and as respondents point out, much evidence in the record relates to this very matter. The trial court's finding that there was such a lien and that the same had not been waived, lost or impaired is supported by substantial evidence. In this connection, the

trial court also found "that subsequent to the purchase of said gas chamber die . . . and at least by October 25, 1952, cross-defendant (Schimel Arms) became and remained hopelessly insolvent and unable to pay its debts." It appears that the dies had been in use by Schimel and along with the assets of Schimel Arms, were ultimately sold at a bankruptcy sale.

 The complaint filed in the present action on the bond, is quite adequate. It sets forth the history of the original claim and delivery action, the filing of the answer alleging existence of the liens, the voluntary dismissal of that action by Schimel Arms, and liability on the bond. This leaves, then, only the question of the amount of the judgment rendered.

The record discloses substantial evidence in support of the finding that at the time of the taking, "plaintiff was lawfully retaining possession of said dies under and by virtue of liens totaling $3,871.08, after giving credit for the $1,672.50 paid by . . . Schimel Arms Corporation after the commencement of the action but prior to the wrongful taking." The complaint and affidavit for claim and delivery place the value of the dies at $7,500; original cost of the three dies was $5,200, and $1,297.75 for the Gas Chamber Die purchased later. The replacement value was considerably more.

 Appellants' contention that the proper measure of damages, if any, should have been the scrap value of the dies, is untenable. This was certainly not the true value of the property at the time of the taking, which is the proper measure of damages. Such value cannot be determined by metal content or weight, nor were the dies ever scrapped.

In *Fletcher Aviation Corp.* v. *Landis Mfg. Co.* (1950), 95 Cal.App.2d 905 [214 P.2d 400], the plaintiff had lawful possession of patterns and dies for making airplane parts. The defendant wrongfully took possession of leased premises including the dies; part were sold to a junk dealer for $487, and plaster patterns were disposed of at a dump. As said in respondents' brief in the instant case, "The court found that the dies and pattern had a value of $7,587.00, against the defendant's contention that they had only a junk value. . . . The court there, as in our case, admitted evidence of the original cost, replacement cost and junk value of the dies." While it is quite true that the facts in the Fletcher Aviation case are not identical with those here presented, the underlying principle relating to value of the dies is clearly applicable.

The record indicates that appellants were accorded a full and fair trial of all existent issues, that findings and judgment are in all respects supported by the evidence, and that no reversible error has been committed.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 20, 1957.